IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RODOLFO PAET, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 12-cv-3416 |
| | ) | |
| MARTHA MEDINA-MALTES, Chicago District Director, United States Citizenship and Immigration Services, ET AL., | ) ) ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs' complaint challenges the United States Citizenship and Immigration Services' ("USCIS") denial of their applications for adjustment of status to that of lawful permanent residents ("LPR"). Defendants have moved to dismiss [26], arguing that Plaintiffs' claims turn on one legal question: whether an applicant who has used a family-based immigrant visa petition to obtain LPR status once before can receive the benefit of the first petition's priority date when he or she applies for LPR status a second time. Although Plaintiffs frame the question slightly differently—as "whether, as a matter of law, Plaintiff Rodolfo Paet 'is the beneficiary of a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001', notwithstanding the fact that he gained permanent residency with the petition filed on his behalf in 1972"—the analysis remains the same.

USCIS determined that the earlier petition could not be used a second time. Having reviewed the pertinent statutes and relevant authorities, the Court concludes the USCIS's interpretation was not arbitrary or capricious and in fact squares with most, if not all, of the available authority. Therefore, for the reasons set forth below, the Court grants Defendants' motion to dismiss [26]. The Court denies as moot Plaintiffs' motion for summary judgment [30]

1

and Defendants' motion to continue or stay consideration of Plaintiffs' motion for summary judgment [35].

**I.     Background**

Plaintiffs Rodolfo, Alma, Joanna, Ryan, and Pamela Paet are a family of five from the Philippines. Rodolfo and Alma are husband and wife, and Pamela (DOB 11/13/93), Joanna (DOB 1/24/87), and Ryan (DOB 3/4/89) are their children. The Paets are citizens and nationals of the Philippines. All of the children are over the age of 18. On October 25, 1972, Primitiva Paet, Rodolfo's mother, filed an I-130 Petition for Alien Relative ("I-130 petition") on behalf of Rodolfo to classify him as an unmarried son of a lawful permanent resident. The petition was granted, and, on July 11, 1973, Rodolfo was admitted to the United States as a "lawful permanent resident" ("LPR"). In 1983, Rodolfo returned to the Philippines to attend college, and in 1996, he formally abandoned his LPR status. Eight years later, all of the Paets were admitted to the United States as temporary visitors. Rodolfo, Joanna, and Ryan last entered the U.S. on April 3, 2004, and Alma and Pamela last entered on May 17, 2004. Since their arrival, the Paets have attempted to acquire LPR status through two different avenues: Alma's employment and Rodolfo's mother.

   A.     *Alma's Employment-Based Visa Petitions*

Just after the Paets arrived in the United States as temporary visitors, Alma accepted an offer of employment and her employer filed an I-140 Immigrant Petition for an Alien Worker ("I-140 petition") on her behalf. The first application was filed on June 23, 2004, and was denied on September 16, 2004, at which point the Paets fell out of lawful visitor status. USCIS eventually granted an I-140 petition filed on Alma's behalf by her employer (Swann Special Care Center), and on February 11, 2005, Alma filed an I-485 Application to Register Permanent Residence or Adjust Status ("I-485 application") based on the approved I-140 petition. Each of

Alma's family members—her husband and then minor children—filed I-485 applications as derivatives. In July 2008, USCIS denied Alma's I-485 application because she had accrued more than 180 days of unauthorized employment. Further, USCIS determined that her unauthorized employment could not be excused under 8 U.S.C. § 1255(i) because she was not the beneficiary of an I-130 petition filed before 2001. As a result of this denial, USCIS also denied the derivative I-485 applications of Rodolfo, Pamela, Joanna, and Ryan because they were dependent upon the approval of Alma's I-485 application.

      B.     *Rodolfo's Second Family-Based Visa Petition*

Independently, in October 2005, Rodolfo's mother, now a United States citizen, filed a second I-130 petition on behalf of Rodolfo to classify him as the married son of a United States citizen. The second I-130 application was pending for almost six years before it was finally approved on May 11, 2011. The second I-130 application was given the same priority date (October 25, 1972) as Primitiva's original petition for her son.

Based on the approval, on July 2, 2011, Rodolfo filed a second I-485 application seeking adjustment of status. Each of his family members also filed I-485 applications as derivatives. On November 29, 2011, USCIS denied Rodolfo's second I-485 application. In its denial, USCIS determined that Rodolfo had not maintained lawful status since his arrival in 2004 and that he did not qualify for an exemption from this ground of ineligibility under 8 U.S.C. § 1255(i) because he did not have an unused I-130 petition filed for him prior to the sunset date of January 14, 1998. USCIS denied Alma and Pamela's I-485 applications because they were dependent upon the approval of Rodolfo's I-485 application. Further, USCIS denied Joanna and Ryan's I-485 applications not only on the basis of their father's denial, but also because they could no longer be considered children (unmarried and under the age of 21) for immigration purposes.

On May 5, 2012, the Paets filed this lawsuit. Shortly thereafter, on August 6, 2012, USCIS re-opened the approval of Rodolfo's second I-130 petition and its corresponding I-485 application denials. USCIS issued a new I-130 reflecting the priority date as the date on which the second I-130 petition was filed (October 13, 2005). USCIS gave the Paets an opportunity to submit additional information, and on November 2, 2012, the Paets requested that the approved I-140 for Alma be substituted for the I-130 and the petition be converted to the EB-3 category for employment-based immigration. However, on November 16, 2012, USCIS denied all of the Paets' I-485 applications on the grounds that a visa was not immediately available to them at the time that they filed their applications for adjustment of status. USCIS again determined that Rodolfo was ineligible to adjust his status because he had unlawful presence that could not be excused under 8 U.S.C. § 1255(i) because there was no extant, unused I-130 petition filed on his behalf prior to 2001. USCIS also refused to hold the applications in abeyance until such time as a visa became available. According to USCIS, the Paets were ineligible to adjust status even when a visa would become available in the future. USCIS also refused to convert the petition to the employment-based category.

  C. *Procedural History*

Plaintiffs filed their second amended complaint on December 19, 2012. On January 9, 2013, Defendants moved to dismiss. On February 19, 2013, Plaintiffs filed their response to the motion to dismiss and also moved for summary judgment. Plaintiffs' summary judgment motion is, in all relevant parts, identical with their response to the motion to dismiss.

**II.** **Analysis**

  **A.** **Standard of Review**

The Administrative Procedure Act ("APA") allows for judicial review of any final agency actions. See 5 U.S.C. §§ 702, 704. A court reviewing an administrative agency's

decision is to decide relevant questions of law, interpret statutory provisions as necessary, and set aside agency actions, findings, and conclusions that are (among other things) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). If the agency's decision is "based on a consideration of the relevant factors" and there has been no "clear error of judgment," the decision is not arbitrary and capricious, and the court will not disturb the decision. *Ind. Forest Alliance, Inc. v. U.S. Forest Serv.*, 325 F.3d 851, 858–59 (7th Cir. 2003) (internal quotation marks and citations omitted); *State of Wisconsin v. EPA,* 266 F.3d 741, 746 (7th Cir. 2001); see generally *Marsh v. Oregon Natural Resources Council,* 490 U.S. 306, 378 (1989) (in determining whether agency decision was "arbitrary or capricious," the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, (1971)); *Baruelo v. Comfort*, 2006 WL 3883311, at *4 (N.D. Ill. Dec. 29, 2006). A court will uphold an agency's decision as long as "the agency examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the relevant data and the choice made." *Id.* at 859 (internal quotation marks and citations omitted). "Pursuant to this deferential standard, reviewing courts should not substitute their judgments for those of an agency * * *." *Id.*; see also *Regal Intern., Inc. v. Napolitano*, 2011 WL 4538690 at *4 (N.D. Ill. 2011).[1]

The agency's decision in this case rested on its interpretation of a provision of 8 U.S.C. § 1255 as well as 8 C.F.R. § 204.2(h)(2). Where a statute and its regulations are ambiguous, courts should defer to the agency's interpretation of its own regulations. *Talk America, Inc. v.*

---

[1] Most of the cases that the Court found involved review of a denial made by an immigration judge after an on-the-record hearing, which under the APA, specifically 5 U.S.C. § 706(2)(E), requires the standard of review to be whether the decision was supported by substantial evidence. See, *e.g., Carrillo-Gonzalez v. INS,* 353 F.3d 1077, 1078 (9th Cir. 2003). Defendants have not suggested that Plaintiffs' challenge is improperly before this Court or that the denial of the applications for adjustment of status had to be reviewed by an immigration judge or the Board of Immigration Appeals.

*Michigan Bell Telephone Co.*, — U.S. —, 131 S. Ct. 2254, 2260-61 (2011); *Exelon Generation Co. v. Local 15, Int'l Brotherhood of Elec. Workers*, 676 F.3d 566, 575-76 (7th Cir. 2012). In such a case, "an agency's interpretation of its own validly issued regulation is 'controlling * * * unless it is plainly erroneous or inconsistent with the regulation.'" *Exelon Generation Co.*, 676 F.3d at 576 (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); see also *Regal Int'l*, 2011 WL 4538690, at *4. However, the agency's interpretation must actually reflect "the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S.at 46; see *Exelon Generation Co.*, 676 F.3d at 576-78.

### B.     Question Presented

Plaintiffs' claims for a writ of mandamus and relief under the APA and Equal Justice Act are all premised on USCIS's conclusion that an applicant who has used a family-based immigrant visa petition to obtain LPR status cannot receive the benefit of the first petition's priority date when he or she applies for LPR status a second time. Specifically, the USCIS concluded that Rodolfo Paet (and, indirectly, his derivatives) did not qualify under § 1255(i) because USCIS considered the 1972 visa petition filed by Primitiva Paet on behalf of Rodolfo to have been fully extinguished when Rodolfo used it as the basis for his entry on an immigrant visa on July 11, 1973. According to USCIS, as of July 11, 1973, the 1972 visa petition became unavailable for any additional immigration purpose. Although Primitiva filed a new visa petition in 2005, the Paets are seeking to use the priority date of the 1972 petition to qualify for an exemption from ineligibility under 8 U.S.C. § 1255(i).

Before turning to the specific issue presented, the Court briefly sets forth the scheme for adjusting status. "Adjustment of status" is the procedural mechanism by which a qualifying applicant present in the United States may become a "lawful permanent resident" ("LPR") or "green card" holder. See 8 U.S.C. § 1255(a); *Singh v. U.S. Dept. of Homeland Sec.*, 2013 WL

6

1246814, at *2 (C.D. Cal. Mar. 27, 2013). To qualify for adjustment of status, the applicant must: (1) apply for adjustment; (2) be eligible to receive an immigrant visa and be admissible to the United States for permanent residence; and (3) have an immigrant visa immediately available at the time the application is filed. 8 U.S.C. § 1255(a); *Crocock v. Holder*, 670 F.3d 400, 403 (2d Cir. 2012); *Oliveira v. Holder*, 568 F.3d 275, 277 (9th Cir. 2009) ("To qualify for an adjustment of status under 8 U.S.C. § 1255(a), an alien in Oliveira's position must establish that he is a member of an enumerated class that qualifies for adjust of status * * *, that he is eligible to receive an immigrant visa, and that the visa is immediately available to him at the time his application is filed."). A qualifying applicant applies for adjustment of status by submitting Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485 application"), to USCIS or to an immigration judge. 8 CFR §§ 245.2.

An applicant is not eligible to adjust if he or she continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States. See, *e.g.*, 8 U.S.C. § 1255(c)(2); see also *Chaudhry v. Holder*, 705 F.3d 289, 291 (7th Cir. 2103). But under § 1255(i), an applicant with unlawful presence or unauthorized employment may adjust if he or she is "the beneficiary (including a spouse or child of the principal alien * * * ) of * * * a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001." 8 U.S.C. § 1255(i)(1)(B)(i). Here, the Paets contend that USCIS erred in denying their I-485 applications on account of their unlawful presence and unauthorized employment because they qualify for relief under § 1255(i). Specifically, the Paets contend that they should have been able to use the priority date of the I-130 petition approved in 1972, which Rodolfo used to gain

7

LPR status in 1973, in their 2011 applications, rather than the priority date of October 13, 2005, which the second I-130 petition was corrected to reflect.

Standing in the Paets' way is Board of Immigration Appeals ("BIA") precedent that "once an approved visa petition is used to obtain a benefit, it cannot be used again." *In re Villarreal-Zuniga*, 23 I. & N. Dec. 886, 889 (BIA 2006). In *Villarreal-Zuniga*, the applicant had used an approved visa petition to acquire LPR status in 1990. 23 I. & N. Dec. at 887. Subsequently, he was put into removal proceedings. He sought relief from removal in the form of adjustment of status, arguing that he could reuse his previously approved visa petition to adjust status to LPR a second time. *Id.* at 888. The BIA framed the issue as "whether the provisions of 8 C.F.R. § 204.2(h)(2) allow an applicant for adjustment of status to base his application on an approved visa petition that he has already used to adjust his status to that of a lawful permanent resident." *Id.* at 887-88.

> The relevant language of § 204.2(h)(2) states:
>
> When a visa petition has been approved, and subsequently a new petition by the same petitioner is approved for the same preference classification on behalf of the same beneficiary, the latter approval shall be regarded as a reaffirmation or reinstatement of the validity of the original petition, except * * * when an immigrant visa has been issued to the beneficiary as a result of the petition approval.

8 C.F.R. § 204.2(h)(2). First, the BIA noted that the text of § 204.2(h)(2) "does not expressly state, but clearly implies," that a new visa petition is the only means of reaffirming or reinstating a previously approved visa petition. *Villarreal*, 23 I. & N. Dec. at 889. The BIA rejected the applicant's position that he could reuse a prior petition simply by filing a new application for adjustment of status because such interpretation would render superfluous § 204.2(h)(2)'s requirement for a new visa petition. *Id.* In other words, subsequent visa petitions would never be required if an original petition was automatically reinstated upon the filing of a new application for adjustment of status. *Id.* The BIA further noted that the applicant's interpretation

also was incompatible with other provisions concerning the validity and adjudication of visa petitions and thus inconsistent with the purpose of the statutory and regulatory scheme governing visa petitions. See, *e.g.*, 8 U.S.C. §§ 203(g)&(h), 245(a)&(b); see also 8 C.F.R. §§ 1205.1(a), 1245.1(a), 1245.2(a)(2), (5)(ii) (2005).

Next, the BIA held that the history of § 204.2(h)(2) supported the view that an applicant may not reuse a visa petition that already been used to obtain a benefit:

> The regulations in effect in 1990, when the visa petition filed on the respondent's behalf was originally approved, clearly provided that an approved visa petition *ceased to convey a priority date or preference classification and could not be restored once it had been used by a beneficiary to obtain either adjustment of status or admission as an immigrant*. 8 C.F.R. § 204.4(f) (1990); cf. Matter of Harry Bailen Builders, Inc., 19 I. & N. Dec. 412 (Comm. 1986) (holding, in accordance with 8 C.F.R. § 204.4(f), that an individual admitted as an employment-based immigrant on the basis of an approved visa petition and labor certification could not, after abandoning his residence in the United States, reimmigrate using the original visa petition and labor certification).
>
> In September 1992, these regulations underwent significant amendment. See Petition to Classify Alien as Immediate Relative of a United States Citizen or as a Preference Immigrant, 57 Fed. Reg. 41,053 (Sept. 9, 1992). Although the clear language of former 8 C.F.R. § 204.4(f) was not retained in the revised regulations, its prohibition against the reuse of an approved visa petition was essentially carried over by the addition of an exception to the reinstatement of a visa petition's validity "when an immigrant visa has been issued to the beneficiary as a result of the petition approval." Compare 8 C.F.R. § 204.4(c) (1990) with 8 C.F.R. § 204.2(g)(2) (1993) (currently at 8 C.F.R. § 204.2(h)(2)). Furthermore, nothing in the commentary accompanying the revisions reflects an intention to change the long-standing rule that the beneficiary of a visa petition may use the approval of that petition to obtain only one visa number. We note in this regard that the prefatory language to the final regulation states that "these provisions do not change the process for petitioning for family members." 57 Fed. Reg. at 41,053 (Summary).

Id. at 889-90 (omitting footnotes) (emphasis added). Based on this history, the BIA in *Villarreal-Zuniga* held that an applicant "may not base his eligibility for adjustment of status on his original approved visa petition, which was already used to adjust his status []." *Id.* at 890.

Neither the statute—8 U.S.C. § 1255(i)—nor the relevant regulations—8 C.F.R. § 204.2(h)(2)—speaks to the issue of whether an applicant can reuse a prior visa petition (or, more

9

specifically, the priority date awarded to the prior visa petition) to obtain adjustment of status under § 1255(i). Faced with the ambiguity, the BIA in *Villarreal* interpreted § 204.2(h)(2) to disallow re-use of the original petition for the purpose of securing an additional benefit. *Villarreal*, 23 I. & N. Dec. at 888-91. From the Court's perspective, this interpretation is not plainly erroneous or inconsistent, and other courts have approvingly cited and relied on *Villarreal*. See *Villa v. Holder*, 464 F. App'x 270, 277-78 (5th Cir. 2012) (citing *Villarreal-Zuniga* and concluding that "a plain reading of OI 211 in conjunction with the facts of Mireya's 1962 entry into the United States would foreclose Mireya's use of her parents' visa priority date a second time"); *Hernani v. U.S. Att'y Gen.*, 366 F. App'x 1, 3 (11th Cir. 2010) (citing *Villarreal-Zuniga* and noting that "[o]nce an approved visa petition is used to obtain a benefit, it cannot be used again"); *Salazar-Reyes v. Holder*, 345 F. App'x 284, 284 (9th Cir. 2009); *Olivas-Lara v. Gonzales*, 241 Fed. App'x 434 (9th Cir. 2007) (BIA "reasonably conclude[ed] that 8 CFR § 204.2(h)(2) precludes re-use of an approved visa petition"); *Fayad v. Keller*, 2011 WL 884042, at *5 (N.D. Cal. Mar. 14, 2011) ("In other words, if an alien is the beneficiary of a second visa petition, the alien may not use the first petition to [ ] adjust his status a second time. An alien may only use an approved immigrant visa petition *once* to adjust status to lawful permanent residence.") (emphasis in original); see also Legal Immigration Family Equity Act Amendments of 2000, Memorandum HQ70/23.I-P, at 15 (Jan. 26, 2001) ("Once a visa petition * * * has been used as the basis for admission as an immigrant or for adjustment of status, the underlying visa petition * * * cannot be used again."); 9 Foreign Affairs Manual 42.53 N.9.2 ("An alien cannot reuse a priority date which was used for the issuance of an immigrant visa (IV) which the alien in turn used to gain lawful admission into the United States.").

Plaintiffs contend that, because "Rodolfo has never used his mother's 1972 petition to adjust status under 8 U.S.C. § 1255(i) * * * [Plaintiffs] remain eligible to do so under the statue,

its implementing regulations, and the Service's own interpretation." Pls' Resp. at 3. In support of their argument, Plaintiffs cite to a USCIS memo, administrative case law, and *Castro-Soto v. Holder*, 596 F.3d 68 (1st Cir. 2010). Plaintiffs also maintain that *In re Villareal-Zuniga* is factually distinguishable. See Pls' Resp. at 4-5. With respect to the last point, *Villareal-Zuniga* does present different facts, but its legal analysis related to an applicant's inability to reuse a previously-used visa petition is applicable. In fact, the BIA decision in *In re Castro-Soto* recognized that *Villareal-Zuniga* was factually distinguishable, but it nevertheless rendered a holding that adopted *Villareal-Zuniga*'s reasoning: "we conclude that the respondent's use of the first visa petition to gain conditional lawful permanent resident status fully extinguished the first petition, such that the priority date is no longer available for grandfathering purposes." *In re Castro-Soto*, 2008 WL 762755, at *1 (BIA Feb. 28, 2008).

Further, the USCIS memo cited by Plaintiffs does not specifically address the question presented here; rather, it "clarifies issues pertaining to a 'derivative' of a grandfathered alien, when an application for labor certification serves to grandfather an alien, and multiple filings for adjustment of status under section 245(i)." Clarification of Certain Eligibility Requirements Pertaining to an Application to Adjust Status under § 245(i) of the Immigration and Nationality Act, Memorandum HQOPRD 70/23.1, at 1, 2005 WL 628644 (Mar. 9, 2005) ("USCIS Memo"). The quote from the USCIS memo upon which Plaintiffs rely presupposes that the applicant is a "grandfathered alien," but here the issue in dispute is whether Rodolfo can even be grandfathered for § 1255(i) relief. As such, the Court is not convinced that the USCIS memo supports, much less compels, a finding in favor of Plaintiffs.

The case law cited by Plaintiffs also fails to support their position. In *Matter of Legaspi*, the BIA considered whether the spouse of an applicant who is grandfathered for purposes of § 1255(i) can independently adjust his status under § 1255(i). 25 I. & N. Dec. 328 (BIA 2010).

11

*Legaspi*, like the USCIS memo, does not address whether an applicant qualifies (or can be grandfathered) for purposes of § 1255(i). Further, the facts in *Legaspi* reveal that the grandfathered alien did not use her prior visa application; rather, she relied on an unused, pre-1998 visa petition to qualify for relief under § 1255(i). *Id*. at 329.

The First Circuit's decision in *Castro-Soto v. Holder* also undermines Plaintiffs' argument. 596 F.3d 68 (1st Cir. 2010). In *Castro-Soto*, Castro-Soto's wife filed a visa application on his behalf in 1992, and contemporaneously, he applied for adjustment of status. *Id.* at 70. Initially, immigration authorities granted him adjustment of status to that of a conditional permanent resident. *Id.* After two years, Castro-Soto applied to have the conditions removed from his status, but immigration authorities denied his application and he was eventually ordered removed. *Id.* at 70-71. Subsequently, after 2001, Castro-Soto's second wife filed a visa petition for him, and again, he filed for adjustment of status. *Id.* But because he had acquired a period of unlawful presence, Casto-Soto argued that his 1992 visa qualified him for relief under § 1255(i), while he qualified for adjustment based on his new visa and new adjustment application. *Id.* at 71-72. This is the same argument that Plaintiffs make here. See Pls' Resp. at 3-4. The BIA and the First Circuit rejected this argument, holding that once Castro-Soto acquired status through his 1992 application, the 1992 visa application was extinguished and could not be used to later qualify him for § 1255(i) relief. The First Circuit affirmed: "We affirm the BIA's determination that the 1992 petition was extinguished for grandfathering purposes, at the latest, by the time Castro-Soto's conditional lawful permanent residency expired and he became removable." *Id.* at 74.

In sum, the Court concludes that the USCIS's interpretation of the relevant statute and regulations was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Furthermore, from a practical standpoint, it is not an illogical

result that an applicant's grandfathered status should expire once he already has obtained the benefit which was sought with the first petition (in this case, legal permanent residence in 1973). The DHS reached this same conclusion in a 2005 policy memorandum in considering the potential for multiple filings for adjustment of status under Section 245(i):

> A grandfathered alien is eligible to file an application to adjust status under section 245(i) as long as the alien meets the requirements of 8 C.F.R. 245.10 and has *not* adjusted status under section 245(i). USCIS no longer considers an alien "grandfathered" once the alien is granted adjustment of status under section 245(i), because the alien has acquired the only intended benefit of grandfathering: [Lawful Permanent Resident] status.

Interoffice Memorandum from William R. Yates, Associate Director for Operations, U.S. Citizenship and Immigration Services, Department of Homeland Security, Clarification of Certain Eligibility Requirements Pertaining to an Application to Adjust Status under Section 245(i) of the Immigration and Nationality Act, HQOPRD 70/23.1 at 6 (March 9, 2005); see *Christensen v. Harris County,* 529 U.S. 576, 587 (2000) (guidance memorandum is entitled to respect to the extent that it is persuasive). The quoted language is consistent with the regulations themselves, which provide that certain visa petitions approvable when filed but later "withdrawn, denied or revoked due to circumstances that have arisen after the time of filing" can still be used to establish an alien's grandfathered status. 8 C.F.R. § 1245.10(a)(3). Nowhere do the regulations state that an *approved* petition, as opposed to one that is pending, withdrawn, denied or revoked, can be used to preserve grandfathered status. The BIA could reasonably conclude from this silence that the exclusion was intentional.

Because the Paets cannot qualify for adjustment of status under § 1255(i), their unauthorized employment and unlawful status cannot be exempted and they (and their derivatives) cannot qualify for adjustment of status. See 8 U.S.C. § 1255(c).

13

**IV.** **Conclusion**

For the reasons stated above, the Court concludes as a matter of law that the USCIS did not err in determining that the Paets do not qualify for adjustment of status and, therefore, the Paets' second amended complaint fails to state a claim upon which relief may be granted. Thus, the Court grants Defendants' motion to dismiss [26]. The Court denies as moot Plaintiffs' both motion for summary judgment [30] and Defendants' motion to continue or stay consideration of Plaintiffs' motion for summary judgment [35].

Dated: September 24, 2013 _____
　　　　　　　　　　　　　　　　　　　　Robert M. Dow, Jr.
　　　　　　　　　　　　　　　　　　　　United States District Judge